Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/05/2026 01:07 AM CDT

In re Interest of Mechi J., a child
under 18 years of age.

State of Nebraska, appellee, v.
Mechi J., appellant.

___ N.W.3d ___

Filed May 22, 2026.    Nos. S-25-393, S-25-394.

1. **Juvenile Courts: Appeal and Error.** Ordinarily, an appellate court reviews juvenile cases de novo on the record and reaches a conclusion independent of the juvenile court's findings.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.
3. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.
4. **Juvenile Courts: Statutes: Jurisdiction.** As a statutorily created court of limited jurisdiction, a juvenile court has only the authority conferred upon it by statute.
5. **Juvenile Courts: Statutes: Jurisdiction: Appeal and Error.** When considering whether a juvenile court acted within its authority, an appellate court will look to the authority conferred by statute.
6. **Statutes: Words and Phrases.** Basic principles of statutory interpretation generally require a court to give statutory language its plain and ordinary meaning.
7. **Appeal and Error: Words and Phrases.** Appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.
8. **Statutes: Words and Phrases.** When legal terms of art are used in statutes, they are to be construed according to their term of art meaning.
9. **Words and Phrases.** A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.

10. **Statutes: Words and Phrases.** In construing statutory language, an appellate court attempts to give effect to all parts of a statute and avoids rejecting as superfluous or meaningless any word, clause, or sentence.
11. **Constitutional Law: Due Process.** The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.
12. **Due Process: Words and Phrases.** While the concept of due process defies precise definition, it embodies and requires fundamental fairness.
13. **Due Process.** Where a state must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirement of the Due Process Clause.
14. **Due Process: Claims.** A party fails to state a viable procedural due process claim when adequate postdeprivation procedures were available but the party failed to invoke them.

Appeals from the Separate Juvenile Court of Douglas County: Vernon Daniels, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Lauren A. Walag, and Hilary A. Drawz, for appellant.

Daniel R. Gubler, Deputy Douglas County Attorney, and Trenton E. Hoeft, Senior Certified Law Student, for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Funke, C.J.

### INTRODUCTION

In these consolidated appeals, a juvenile challenges the orders of the separate juvenile court of Douglas County, Nebraska, terminating the court's jurisdiction and the juvenile's probation and directing that the juvenile's records not be sealed. The juvenile claims that in so ordering, the court failed to comply with a Nebraska statute and deprived him of due process. Finding no merit to those arguments, we affirm the orders of the juvenile court.

## BACKGROUND

Mechi J. was born in September 2006. At 17 years of age, Mechi was adjudicated pursuant to Neb. Rev. Stat. § 43-247(2) (Cum. Supp. 2024) in two separate juvenile cases and ultimately placed on probation.

As relevant here, on October 18, 2024, hearings were held in both cases. At those hearings, Mechi asked that a termination date be set for his probation. The court indicated that it would consider the results of a predisposition investigation and a co-occurring evaluation that had been completed and make orders and findings at a later time. The court then stated that because of Mechi's age, "if [Mechi didn't] comply," the court's remedies were "probably limited to not sealing [his] records." Mechi agreed that this gave him "some incentive . . . to do what [was] ordered of [him]."

Several days later, on October 21, 2024, the court entered orders directing, in relevant part:

• Mechi shall remain on probation for a period of 6 months, "unless sooner extended or revoked for cause,"
• Mechi's record shall be "sealed, if there are no objections, at the time [he] successfully completes probation,"
• Mechi's probation shall "automatically terminate" on April 28, 2025, "unless application for a hearing is made prior thereto," and
• Mechi shall pay $71 in court costs by November 30, 2024.

We hereinafter refer to these orders as the "October 2024 orders."

The record before us on appeal reflects no payment of the court costs and no further hearings or filings between October 21, 2024, and April 29, 2025. Then, on April 29, the court filed orders in both cases, stating that the matters had come before it for "probation check hearing[s]" on April 28. In those orders, which are hereinafter referred to as the "April 2025 orders," the court terminated its jurisdiction and Mechi's probation and directed that Mechi's records not be sealed at that time, because the court costs had not been paid.

Notably, the court did not characterize the termination of its jurisdiction or Mechi's probation as "unsuccessful" or otherwise. Nor did the court indicate upon what evidence it relied in concluding that the court costs had not been paid.

Mechi appealed in both cases, and we moved the consolidated cases to our docket.[1]

## ASSIGNMENTS OF ERROR

Mechi assigns, restated and reordered, that the juvenile court erred in terminating its jurisdiction and his probation "unsatisfactorily" and in ordering that his records not be sealed, because it failed to comply with the requirements of Neb. Rev. Stat. § 43-286 (Cum. Supp. 2024) and procedural due process.

## STANDARD OF REVIEW

[1] Ordinarily, an appellate court reviews juvenile cases de novo on the record and reaches a conclusion independent of the juvenile court's findings.[2] In their briefs on appeal, both parties indicated that this was the appropriate standard of review here. However, at oral arguments, the State argued that in *In re Interest of Johnny H.*,[3] which was decided after the parties' briefs in these cases were filed, we reviewed a similar case de novo on the record for an abuse of discretion. The State suggests that review de novo on the record for an abuse of discretion is different from review de novo on the record and that the former standard should apply here. We need not resolve those questions because for the reasons set forth below, we see no error under any standard.[4]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[2] See, e.g., *In re Interest of Victor L.*, 309 Neb. 21, 958 N.W.2d 413 (2021).

[3] *In re Interest of Johnny H.*, 320 Neb. 675, 29 N.W.3d 808 (2026).

[4] See, e.g., *Sebade v. Sebade*, 320 Neb. 398, 28 N.W.3d 19 (2025) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

[2,3] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.[5] The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process also presents a question of law,[6] which an appellate court reviews independently of the lower court.[7]

## ANALYSIS

### Statutory Claims

In his first assignment of error, Mechi challenges the juvenile court's April 2025 orders on statutory grounds. Mechi argues that the court "essentially revoked"[8] his probation and changed the disposition because it terminated its jurisdiction and his probation as "unsatisfactorily"[9] completed and ordered that his records not be sealed, even though there had not been any motion to revoke probation or any objection to sealing his records. As such, Mechi argues that the court should have complied with the procedures set forth in § 43-286 for revoking probation or changing the disposition but failed to do so. The State, in turn, argues that the court was not subject to the requirements of § 43-286 here, because it did not revoke Mechi's probation or change the disposition. Instead, the State argues that the court automatically terminated its jurisdiction and Mechi's probation, as provided in the October 2024 orders. The State similarly argues that the order not to seal Mechi's records was consistent with the October 2024 orders insofar as Mechi did not "successfully complete[]" probation.

---

[5] *In re Interest of Johnny H., supra* note 3.

[6] *State v. Trail*, 319 Neb. 84, 21 N.W.3d 61 (2025).

[7] See, e.g., *D&M Roofing & Siding v. Distribution, Inc.*, 319 Neb. 707, 24 N.W.3d 850 (2025).

[8] Brief for appellant at 14.

[9] *Id*. at 9.

[4,5] As a statutorily created court of limited jurisdiction, a juvenile court has only the authority conferred upon it by statute.[10] Therefore, when considering whether a juvenile court acted within its authority, an appellate court will look to the authority conferred by statute.[11]

The statute upon which Mechi relies, § 43-286, authorizes the filing of a "motion to revoke probation or supervision or to change the disposition" when a juvenile adjudicated pursuant to § 43-247(2), among others, is alleged to have violated a term of probation or supervision or a court order.[12] However, in such cases, § 43-286 requires, in relevant part, that the juvenile be notified of the "specific factual allegations of the alleged violations"[13] and given an opportunity for a hearing to "determine the validity of the allegations."[14] Section 43-286 also prescribes that if the court revokes probation, supervision, or another court order, it must "enter a written statement as to the evidence relied on and the reasons for revocation."[15] The court is generally prohibited from "chang[ing] a disposition" unless the requisite procedures have been satisfied.[16]

Mechi is correct that Nebraska courts have previously found that a juvenile court commits plain error if it revokes probation or supervision, or changes the disposition, when the procedures set forth in § 43-286 have not been satisfied.[17]

---

[10] *In re Interest of Johnny H., supra* note 3.

[11] *Id.*

[12] § 43-286(5)(b).

[13] § 43-286(5)(b)(i).

[14] § 43-286(5)(b)(ii).

[15] § 43-286(5)(b)(vi).

[16] § 43-286(6)(a). See, also, § 43-286(6)(b) (authorizing modifications upon juvenile's motion under specified circumstances).

[17] See, e.g., *In re Interest of Josue G.*, 299 Neb. 784, 910 N.W.2d 159 (2018); *In re Interest of Markice M.*, 275 Neb. 908, 750 N.W.2d 345 (2008)**;** *In re Interest of Nowa K.*, 33 Neb. App. 446, 16 N.W.4d 896 (2025); *In re Interest of Iyana P.*, 25 Neb. App. 439, 907 N.W.2d 333 (2018); *In re Interest of Torrey B.*, 6 Neb. App. 658, 577 N.W.2d 310 (1998).

However, by their express terms, the relevant provisions of § 43-286 pertain only to "motion[s] to revoke probation or supervision or to change the disposition"[18] and "change[s]"[19] in disposition, and based upon our interpretation of that statute, we agree with the State that none of those actions occurred in this matter.[20]

[6-9] Where there are no statutory definitions of the relevant terms, as is the case here,[21] basic principles of statutory interpretation generally require a court to give statutory language its plain and ordinary meaning.[22] Appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.[23] However, when legal terms of art are used in statutes, they are to be construed according to their term of art meaning.[24] A legal term of art is a word or phrase having a specific, precise meaning in a given specialty apart from its general meaning in ordinary contexts.[25]

Applying the aforementioned principles here, it is apparent that "motion" is a legal term of art, denoting a "written or oral application requesting a court to make a specified ruling or order."[26] Consistent with dictionaries from the 1980s,[27] when

---

[18] § 43-286(5)(b).

[19] § 43-286(6)(a).

[20] See, e.g., *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994) (finding that predecessor to current § 43-286(5)(b)(vi) applied only in specified circumstances and that when those circumstances were not present, court had no obligation under that statute to explain its reasons).

[21] See Neb. Rev. Stat. § 43-245 (Cum. Supp. 2024).

[22] *State ex rel. Condon v. Braaten*, 320 Neb. 214, 26 N.W.3d 532 (2025).

[23] *Aguilar v. Valdez-Mendoza*, 318 Neb. 402, 16 N.W.3d 130 (2025). See, also, e.g., *State v. Dailey*, 314 Neb. 325, 990 N.W.2d 523 (2023) (specifically looking to dictionaries from time of statute's enactment to determine meaning).

[24] *Hauxwell v. Middle Republican NRD*, 319 Neb. 28, 21 N.W.3d 21 (2025).

[25] *Id*.

[26] Black's Law Dictionary 1168 (10th ed. 2014).

[27] See, e.g., 3 The Oxford English Dictionary 17 (2d ed. 1989).

the relevant provisions of § 43-286 were initially adopted,[28] Nebraska courts have previously construed a "change" to mean a "modif[ication]."[29] And, "disposition," like "motion," is a legal term of art, denotating instead a "final settlement or determination."[30]

The record before us on appeal contains no motion to revoke probation or change the disposition in that sense. Mechi concedes as much. However, he argues that his probation was "essentially revoked," and that the disposition was changed, because the court terminated its jurisdiction and his probation as "unsatisfactorily" completed insofar as it ordered that his records not be sealed.[31] In so arguing, Mechi relies on the statement in the October 2024 orders that his records shall be "sealed, if there are no objections, at the time [he] successfully completes probation," as well as the fact that no objections are alleged to have been made.

We disagree. Mechi's argument is premised on the view that probation must be deemed "successfully" or "satisfactorily" completed insofar as no actual motion to revoke was filed. However, previously, in *In re Interest of Candice H.*,[32] we found that the juvenile court erred in entering orders wherein it had "[found] that its jurisdiction should be terminated because [the juvenile] had reached the age of majority" and had directed that the juvenile's records be sealed. We based that conclusion in part on the fact that there was nothing in the record indicating that the juvenile had successfully completed probation, something that Mechi suggested at oral

---

[28] See 1981 Neb. Laws, L.B. 346, § 42.

[29] See *In re Interest of Johnny H., supra* note 3, 320 Neb. at 689, 29 N.W.3d at 820. Accord *In re Interest of Juan L.*, 6 Neb. App. 683, 577 N.W.2d 319 (1998).

[30] Black's Law Dictionary, *supra* note 26 at 572.

[31] Brief for appellant at 14.

[32] *In re Interest of Candice H.*, 284 Neb. 935, 937, 824 N.W.2d 34, 36 (2012).

arguments was not the case here. However, we also opined that there was no "principled basis for concluding that a juvenile satisfactorily completes probation merely by reaching the age of majority."[33]

[10] Our opinion in *In re Interest of Candice H.* did not expressly reference the principle that in construing statutory language, an appellate court attempts to give effect to all parts of a statute and avoids rejecting as superfluous or meaningless any word, clause, or sentence.[34] However, it is consistent with that principle, whereas Mechi's approach is not. In presuming that probation is successfully or satisfactorily completed whenever there is no motion to revoke, Mechi would read the word "successfully" out of the October 2024 orders. He would also read the word "satisfactorily" out of Neb. Rev. Stat. § 43-2,108.03 (Cum. Supp. 2024), which prescribes, in relevant part, that the records of juveniles adjudicated under § 43-247(2), among others, shall be "automatically sealed" when the juvenile has "satisfactorily completed the probation." We decline to adopt such an approach and instead give meaning to both "successfully" (or "satisfactorily") and "completed." We also note that the legislative history of § 43-286, while not dispositive, supports the view that the successful or satisfactory completion requires more than the end of the term of probation.[35]

---

[33] *Id*. at 939, 824 N.W.2d at 37.

[34] See *Peterson v. Jacobitz*, 309 Neb. 486, 961 N.W.2d 258 (2021).

[35] See, e.g., Floor Debate, Amend. 2109, L.B. 800, 101st Leg., 2d Sess. 54 (Mar. 15, 2010) (statement of Senator Council: "the point with regard to when they will be sealed, I think it's important to note that the committee was very careful to make sure that this privilege, for lack of a better term, is reserved to the young people who successfully and satisfactorily complete their probation. And you need to understand there's a distinction. The courts can deem someone to have completed their probation, and then there is a category of satisfactorily completing your probation—and those are the individuals who are going to be eligible under this program that's set out in AM2109").

The term "satisfactorily" is also not defined for purposes of the relevant provisions of the Nebraska Juvenile Code.[36] However, giving that term its plain meaning in 2010, when legislation calling for juveniles' records to be sealed when probation is "satisfactorily completed" was first adopted,[37] a juvenile cannot be seen to have successfully or satisfactorily completed probation if he or she failed to pay the court costs as ordered.[38] That was the court's stated rationale for ordering that Mechi's records not be sealed.

As Mechi observes, the court did not state the evidence that it relied upon in concluding that he had not paid the court costs. However, insofar as there was no motion to revoke probation or supervision or change the disposition, and no change in disposition, the court had no obligation under § 43-286 to include such a statement. Whether due process required the court to do so is another question, discussed below.

At oral arguments, Mechi did note that the docket in one case shows that he paid the court costs, with the apparent implication that the court erred in concluding otherwise. However, there was no evidence of this payment in the record before us on appeal. It is the appellant's burden to create a record for the appellate court which supports the errors assigned.[39]

Mechi's invocation of the principle that the juvenile code is to be liberally "'construed to [ensure] the rights of all juveniles'" and ensure them fair hearings is equally unavailing.[40] We agree with courts in other jurisdictions that this principle

---

[36] See § 43-245.

[37] 2010 Neb. Laws, L.B. 800, § 28 (codified at § 43-2,108.03).

[38] See, e.g., 14 The Oxford English Dictionary, *supra* note 27 at 503.

[39] *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[40] Brief for appellant at 9 (quoting Neb. Rev. Stat. § 43-246(1) and (7) (Cum. Supp. 2024)). See, also, *In re Interest of Johnny H., supra* note 3.

of statutory interpretation cannot overcome the plain meaning of the statute.[41]

## Constitutional Claims

In his second assignment of error, Mechi challenges the juvenile court's April 2025 orders on constitutional grounds. Mechi argues that his due process rights were violated because he received no notice or opportunity for a hearing and because there was no evidence to support the court's conclusion that he failed to pay court costs. The State, in contrast, claims that because the court acted consistently with the October 2024 orders in terminating its jurisdiction and Mechi's probation and in directing that his records not be sealed, the notice and opportunity for a hearing that Mechi received prior to the issuance of those orders "satisfie[d] the requirements of due process."[42]

[11,12] The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.[43] While the concept of due process defies precise definition, it embodies and requires fundamental fairness.[44]

Mechi points to opinions of this court and the Nebraska Court of Appeals stating that "[g]enerally, procedural due process requires parties whose *rights are to be affected* by a proceeding to be given timely notice . . . and a hearing

---

[41] See, e.g., *Doe v. Camacho*, 220 Vt. 226, 329 A.3d 156 (2024); *National Geographic Soc. v. DC DOES*, 721 A.2d 618 (D.C. 1998); *Martinez v. State*, 24 S.W.3d 10 (Mo. App. 2000). See, also, 3 Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 60:1 (7th ed. 2008).

[42] Brief for appellee at 16.

[43] *In re Interest of Aaden S.*, 320 Neb. 785, 30 N.W.3d 668 (2026). See, also, *N'Da v. Golden*, 318 Neb. 680, 18 N.W.3d 570 (2025) (Nebraska's due process clause affords protections coextensive to those of federal constitution).

[44] *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024).

before an impartial decisionmaker."[45] Mechi also observes that Nebraska courts have previously opined that due process requires "'some type of evidence, meaning testimony must be under oath and documents must be admitted into evidence before being considered.'"[46]

[13,14] However, while Mechi is correct that courts often consider predeprivation procedures in determining whether due process was satisfied, postdeprivation procedures have also been found to satisfy due process.[47] In particular, we have found that where a state must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirement of the Due Process Clause.[48] In fact, we have previously opined that a party fails to state a viable procedural due process claim when adequate postdeprivation procedures were available but the party failed to invoke them.[49]

In this case, as to the termination of the court's jurisdiction and Mechi's probation, we agree with the State that the notice and opportunity for a hearing that Mechi received prior to the issuance of the October 2024 orders sufficed for due process purposes. As discussed above, when the court terminated its jurisdiction and Mechi's probation on April 29, 2025, it acted

---

[45] See, e.g., *Diedra T. v. Justina R.*, 313 Neb. 417, 430, 984 N.W.2d 312, 323 (2024) (emphasis supplied).

[46] Brief for appellant at 6 (quoting *In re Interest of Nowa K., supra* note 17).

[47] See, e.g., *Niveen v. TAX 106*, 311 Neb. 574, 974 N.W.2d 15 (2022), *vacated on other grounds ___ U.S. ___*, 143 S. Ct. 2580, 216 L. Ed. 2d 1191 (2023); *White v. Busboom*, 297 Neb. 717, 901 N.W.2d 294 (2017); *Manning v. Dakota Cty. Sch. Dist.*, 279 Neb. 740, 782 N.W.2d 1 (2010); *Pierce v. Douglas Cty. Civil Serv. Comm.*, 275 Neb. 722, 748 N.W.2d 660 (2008); *Francis v. City of Columbus*, 267 Neb. 553, 676 N.W.2d 346 (2004); *State v. One 1970 2-Door Sedan Rambler*, 191 Neb. 462, 215 N.W.2d 849 (1974); *Stauffer v. Weedlun*, 188 Neb. 105, 195 N.W.2d 218 (1972).

[48] See, e.g., *Manning, supra* note 47.

[49] See, e.g., *White, supra* note 47; *Manning, supra* note 47.

consistently with the October 2024 orders, which called for Mechi's probation to "automatically terminate" on April 28 "unless application for a hearing is made prior thereto." The October 2024 orders were issued after a hearing, of which Mechi had notice and at which he argued that a termination date be set for his probation, and there is no allegation that any application for a hearing about termination was made prior to April 28, 2025.

As to the order that Mechi's records not be sealed, even assuming that the failure to seal the records deprived Mechi of a liberty or property interest by "expos[ing] [him] to continued collateral consequences,"[50] he failed to state a viable due process claim because he failed to comply with the post-deprivation procedures set forth in § 43-2,108.03. As was previously mentioned, § 43-2,108.03 requires that the records of certain juveniles be "automatically sealed" once they have "satisfactorily completed" probation.[51] Section 43-2,108.03 also prescribes that if the records are not "automatically sealed," the juvenile may notify the court, "which shall seal the record."[52] In addition, § 43-2,108.03 prescribes that when a juvenile whose records have not been automatically sealed reaches the age of majority or 6 months have passed since the case was closed, whichever occurs sooner, the juvenile or his or her parent or guardian may file a motion in the court of record asking that the record be sealed.

Mechi does not allege that he either notified the juvenile court of its failure to seal his records (on the theory that he had "satisfactorily completed" probation) or filed a motion with the juvenile court asking that his records be sealed. Nor does he seriously dispute the adequacy of those procedures. At oral arguments, Mechi said that he proceeded with an appeal,

---

[50] Brief for appellant at 14.

[51] See, also, § 43-2,108.03(1)(a), (2)(a), and (3)(a) (discussing other juveniles whose records are to be "automatically sealed").

[52] See, also, § 43-2,108.03(1)(b), (2)(b), (3)(b), and (4)(b).

instead of filing a motion with the juvenile court, because he could file an appeal immediately, whereas he would have had to wait until he reached the age of majority or 6 months had passed since the case was closed, whichever was sooner, to file a motion with the juvenile court. However, he cites no authority to support the view that a postdeprivation procedure should be seen to be inadequate on that basis, and we are not persuaded of this.

In closing, we also note that after the court issued the April 2025 orders in Mechi's cases, the Legislature adopted a measure that should help prevent the recurrence of these questions. The legislation requires that at least 30 calendar days before the expiration of a juvenile's term of probation, the probation officer shall send a progress report to the attorneys in the case containing all court orders relating to the term of probation, as well as information on all conditions of probation and the juvenile's compliance therewith.[53] Had that occurred here, all parties would have been more cognizant of what Mechi was required to do under the October 2024 orders and whether he had fulfilled those requirements.

## CONCLUSION

The juvenile court's orders terminating its jurisdiction and Mechi's probation and directing that his records not be sealed complied with § 43-286 and due process. As such, we affirm the orders of the juvenile court.

Affirmed.

---

[53] 2025 Neb. Laws, L.B. 530, § 18 (codified at Neb. Rev. Stat. § 43-286.03 (Supp. 2025)).